UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Emerson Hall Associates, L.P.,<br>1313 East Hyde Park Boulevard,<br>Chicago, IL 60615,<br><br>    Plaintiff,<br><br>vs.<br><br>Travelers Casualty Insurance Company of America,<br>1 Tower Square,<br>Hartford, CT 06183,<br><br>    Defendant. | Case No. 15-CV-00447<br><br>**DEFENDANT TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT** |

## INTRODUCTION

Plaintiff Emerson Hall seeks an Order from the Court permitting it to Amend its Complaint in order to (1) clarify prior allegations; (2) assert a defamation claim based on allegations in Travelers' Counterclaim; and (3) assert additional bad faith conduct due to the allegations in Travelers' Counterclaim. This Court should deny Plaintiff's Motion to Amend as it is untimely and futile due to the absolute litigation privilege and case law generally holding that evidence of an insurance company's litigation conduct, strategies and techniques after the commencement of the suit is irrelevant, inadmissible and prohibited as against public policy.

1

## STATEMENT OF FACTS

### I. The Complaint

In June 2015, Plaintiff Emerson Hall Associates, L.P. ("Plaintiff" or "Emerson Hall") filed suit in Rock County, Wisconsin, against Travelers alleging claims of bad faith and breach of contract following a September 2013 fire and December 2013 water loss incident at an elderly housing facility located at 930 Church Street in Beloit, Wisconsin. (Compl., DN2) Travelers timely removed the matter to federal court. (DN2 & DN23)

### II. Travelers Filed A Counterclaim

Travelers filed a Motion to Amend to assert additional Affirmative Defenses, as well as a Counterclaim for Breach of Contract on or about December 29, 2015. (DN28-DN30) The Court granted the Motion on or about January 19, 2016. (DN33) Travelers filed its Amended Answer and Counterclaim on January 20, 2016. (DN34)

### III. Plaintiff's Initial Counsel Withdraws and New Counsel Appears

Emerson Hall's initial counsel filed a Motion to Withdraw. (DN26 & DN27) This Motion was granted by the Court on February 5, 2016. (DN39 & DN40) Thereafter, Emerson Hall retained new counsel which appeared in this case on March 7, 2016. (DN42 & DN43)

Emerson Hall's new counsel has now moved to Amend its Complaint in order to (1) clarify the factual bases for its claims; and (2) to include Travelers' false accusations of fraud as an additional basis for its bad faith claim. (DN 46 & DN47) A review of Plaintiff's proposed Amended Complaint, however, also reveals that Emerson Hall is also seeking to allege that the allegations contained in Travelers' Counterclaim are "false, reckless, defamatory and malicious." (DN47 & DN47.1, ¶ 81)

## ARGUMENT AND ANALYSIS

I.  **Standard For Denying Motions To Amend**

"Whether to grant a motion to amend a pleading is within a court's discretion." *Pabst Brewing Co., Inc. v. Corrao*, 176 F.R.D. 552, 557 (E.D. Wis. 1995). However, "Federal Rule of Civil Procedure 15(a) provides that if a party is not entitled to amend a pleading as a matter of course, it may amend 'with the opposing party's written consent or the court's leave.'" *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008).

The seventh circuit has instructed that courts, in their discretion, may deny a proposed amendment if (1) the moving party has unduly delayed in filing the motion, (2) the opposing party would suffer undue prejudice, or (3) the pleading is futile. *Id*. "A court of appeals will overturn a district court's denial of a motion to amend only if the district court has abused that discretion by not providing a justifying reason for its decision." *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992). No abuse of discretion has been found if the amendment will not cure the original pleading; if the amendment fails to state a claim; or if the proposed amendment could not withstand a motion to dismiss. *Glick v. Koenig*, 766 F.2d 265, 268 (7th Cir. 1985).

Here, Plaintiff's Motion to Amend its Complaint should be denied due to (1) undue delay and dilatory motive and (2) futility.

II.  **Denial Of Plaintiff's Motion To Amend Proper Due To Delay And Dilatory Motive**

  A.  **Undue Delay And Dilatory Motive**

A plaintiff's right to amend is not absolute. *See Brunt v. SEIU*, 284 F.3d 715, 720 (7th Cir. 2002). While delay is usually not reason enough on its own, "the longer the delay, the greater the presumption against granting leave to amend." *Soltys*, *supra*, 70 F.3d at 743.

Here, Emerson Hall filed suit in June 2015. (Compl., DN 2) Emerson Hall's Motion to Amend its Complaint was filed in March 2016. (DN47) This nine month delay constitutes an undue delay especially since one of the stated reasons for the amendment is simply to clarify "the factual bases for its claims" justifying denial of Emerson Hall's Motion to Amend as a matter of law. (Id., p. 2) In fact, Plaintiff admits that its "substantive claims remains the same." (Id.) Rather, it simply seeks to refine and better explain its claims. (Id.) However, clarification of Emerson Hall's factual allegations, if any, may be accomplished via the discovery process without need for additional or amended pleadings.

**B.     Amendment Based On Moot Claim**

Under federal law, a plaintiff will not be allowed to amend his complaint if such amendments will be futile. *See Moore v. State of Indiana*, 999 F.2d 1125, 1128 (7th Cir. 1993). Here, Plaintiff seeks to Amend the Complaint in order to assert a claim of bad faith based on defense counsel's litigation decision to file a Counterclaim for Breach of Contract against Emerson Hall for its alleged breach of its duty to cooperate or false statements/representations during the claims process. (DN45-DN47.1) Additionally, a review of the proposed Amended Complaint reveals that Plaintiff may also be seeking to assert a defamation claim. (DN47-DN47.1, ¶ 81)

The 7th Circuit, however, has recognized an absolute litigation privilege which precludes not only tort liability, but also contractual liability claims. *See Rain v. Rollys-Royce Corp.*, 626 F.3d 372, 377-79 (7th Cir. 2010). In *Rain*, the 7th Court, applying Indiana law, recognized that:

> The purpose of the privilege is to 'preserv[e] the due administration of justice by providing actors in judicial proceedings with the freedom to participate without fear of future defamation claims. * * * In the words of one Indiana court, the privilege recognizes that the 'public['s] interest in the freedom of expression by participants in judicial proceedings, uninhibited by the risk of resultant suits for defamation, is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of the individual to a legal remedy when he has been wronged."

*Id*., 376-77.

Wisconsin courts also recognize that "[j]udicial proceedings are protected by an absolute privilege." *See Churchill v. WFA Econometrics Corp.*, 258 Wis.2d 926, 932 (Wis. App. 2002). According to the *Churchill* court, "[t]he absolute privilege rule was established to provide litigants with the freedom to access the courts, 'to preserve and defend their rights and to protect attorneys during the course of their representation of clients.'" *Id*., citation omitted. In order for the privilege to apply, "the statements must satisfy two requirements: (1) the statement 'must be made in a procedural context that is recognized as affording absolute privilege; and (2) the statement 'must be relevant to the matter under consideration.'" *Id*.

Here, Plaintiff seeks to amend its Complaint in order to assert a defamation claim based on allegations set forth in a Counterclaim. (DN47-DN47.1, ¶ 81) However, allegations in a Counterclaim are afforded an absolute privilege under Wisconsin law as recognized by the 7th Circuit. Accordingly, Plaintiff's Motion to Amend its Complaint in order to assert a defamation claim against Travelers, which would be barred by the absolute privilege rule is futile, and amendment of Plaintiff's Complaint should be denied as a matter of law.

Plaintiff also seeks to Amend its Complaint in order to allege an additional element of bad faith based on allegations contained in Travelers' Counterclaim. (DN45-DN47.1) This claim is also futile as bad faith arises out of the denial of a claim during the claims handling process and not due to litigation conduct. *See Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 691-92, 271 N.W.2d 368, 376 (Wis. 1978) (concluding that insured "must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim."); *see also Brethorst v. Allstate Property and Cas. Ins. Co.*, 2011 WI 41, ¶ 36, 334 Wis.2d 23, 41, 798 N.W.2d 467, 476 (holding that in order to prove

bad faith against an insurer a plaintiff must establish that there was no reasonable basis for the insurance company's denial of the insured's claim for benefits under the policy). Here, Travelers did not deny Plaintiff's claim having paid more than a million dollars as a result of both the fire and water loss claims, but rather exercised its right to dispute the legitimacy of some of the fairly debatable damages claimed by Plaintiff. The fact that Travelers' litigation defense includes a counterclaim for breach of contract by the insured does not give rise to a pre-existing claim of bad faith.

In fact, courts around the country have generally rejected bad faith claims based on litigation conduct of the insurer or its defense counsel. The rationale for this holding is that evidence of the insurer's litigation tactics are irrelevant to proof of bad faith handling of the underlying claim. *See Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512 (Ky. 2006). The *Knotts* court recognized that "[t]o permit evidence of insurers' litigation strategies and tactics is to impede insurers' access to the courts and right to defend, because it makes them reluctant to contest coverage of questionable claims." *Id*., 521.

Other courts have similarly held:

> Defensive pleading, including the assertion of affirmative defenses, is communication protected by the absolute litigation privilege. Such pleading, even though allegedly false, interposed in bad faith, or even asserted for inappropriate purposes, cannot be used as the basis for allegations of ongoing bad faith. No complaint can be grounded upon such pleading.

*California Physicians' Services v. Superior Court*, 9 Cal.App. 4th 1321, 12 Cal.Rptr.2d 95, 100 (Cal. App. 1992); *see also Nies v. National Auto. & Cas. Ins. Co.*, 199 Cal.App.3d 1192, 245 Cal.Rptr. 518 (Cal. Ct. App. 1988) (ruling that insurers will be disabled from conducting vigorous defense in a bad faith action if their pleadings may be used to provide bad faith); *Parker v. Southern Farm Bureau Cas. Ins. Co.*, 326 Ark. 1073, 935 S.W.2d 556, 562 (Ark. 1996) (holding that "none of the

conduct by Farm Bureau after the filing of the complaint, including legal positions asserted, can provide a basis for Parker's bad faith claim); *Roussalis v. Wyoming Med. Center, Inc.*, 4 P.3d 209, 257 (Wy. 2000) (disallowing bad faith claim based on ruling that post-filing conduct is controlled by the Rules of Civil Procedure); *Sims v. The Travelers Ins. Co.*, 16 P.3d 468 (Ok. App. 2000) (concluding that litigation conduct, such as filing motions to dismiss, objecting to discovery, and refusing requests for mediation, cannot be the basis for a bad faith action); *Parsons v. Allstate Ins. Co.,* 165 P.3d 809, 819 (Colo. App. 2007) (refusing to permit jury to consider attorney's litigation conduct as part of an insured's bad faith claim).

The overall policy rationale for excluding evidence of litigation strategies and techniques of an insurance company was succinctly set forth by the Montana Supreme Court when it concluded:

> [T]he continuing duty of good faith does not necessarily render evidence of an insurer's post-filing conduct admissible. * * * Public policy favors the exclusion of evidence of an insurer's post-filing litigation conduct in at least two respects. First, permitting such evidence is unnecessary because the initial action, trial courts can assure that defendants do not act improperly. Next, and more importantly, the introduction of such evidence hinders the right to defend and impairs access to courts. The Rules of Civil Procedure control the litigation process, and in most instances, provide adequate remedies for improper conduct during the litigation process. Once the parties have assumed adversarial roles, it is generally for the judge in the underlying case and not the jury to determine whether a party should be penalized for bad faith tactics. * * * An attorney in litigation is ethically bound to represent the client zealously within the framework provided by statutes and the Rules of Civil Procedure. These procedural rules define clear boundaries of litigation conduct. If a defense attorney exceeds the boundaries, the judge can strike the answer and enter judgment for the plaintiff, enter summary judgment for the plaintiff, or impose sanctions. * * * There is no need to penalize insurers when their attorneys represent them zealously within the bounds of litigation conduct. To allow a jury to find that an insurer acted in bad faith by zealously defending itself is to impose such a penalty. The most serious policy consideration in allowing evidence of the insurer's post-filing conduct is that it punishes insurers for pursuing legitimate lines of defense and obstructs their right to contest coverage of dubious claims. * * * This brings us to another crucial point, the relevance of the insurer's post-filing conduct. In general, an insurer's litigation tactics and strategy in defending a claim are not relevant to the insurer's decision to deny coverage. Indeed, if the insured must rely on evidence of the insurer's post-filing conduct to prove bad faith in denial of coverage, questions arise as to the validity of the insured's initial claim of bad

> faith. * * * After the onset of litigation, an insurer begins to concentrate on supporting the decisions that led it to deny the claim. The insurer relies heavily on its attorneys using common litigation strategies and tactics to defend against a debatable claim. Consequently, actions taken after an insured files suit are at best marginally probative of the insurer's decision to deny coverage. * * *

*Palmer v. Farmers Ins. Exchange*, 261 Mont. 91, 121—23, 861 P.2d 895, 913-15 (Mont. 1993).

In addition to state courts, various federal courts have also precluded litigation conduct from serving as evidence of an insurer's bad faith. *See Timberlake Const. Co. v. U.S. Fidelity and Guar. Co.*, 71 F.3d 335, 340-41 (10th Cir. 1995) (holding that evidence of litigation conduct "should rarely, if ever, be allowed to serve as proof of bad faith" reasoning that to allow "litigation conduct to serve as evidence of bad faith would undermine an insurer's right to contest questionable claims and to defend itself against such claims … [P]ermitting allegations of litigation misconduct would have a 'chilling effect' on insurers, which could unfairly penalize them by inhibiting their attorneys from zealously and effectively representing their clients within the bounds permitted by law … [i]nsurers' counsel would be placed in an untenable position if legitimate litigation conduct could be used as evidence of bad faith. Where improper litigation conduct is at issue, generally the Federal Rules of Civil Procedure provide adequate means of redress …"); *see also Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 535 (6th Cir. 2006) (concluding that insurer's failure to pay settlement was inadmissible evidence of bad faith and concluding that Federal Rules of Civil Procedure provided "litmus test" for inadmissible litigation conduct).

Here, the Court reviewed and permitted Travelers' Motion to Amend to assert a Counterclaim for Declaratory Judgment. (DN33) If Plaintiff's new counsel believes the allegations are without merit, they are entitled to pursue a Motion for Summary Judgment. Allegations in the Counterclaim do not, however, give rise to either a claim for defamation or bad faith under the case

law set forth, in detail, above. Because the allegations of bad faith and defamation are invalid, Emerson Hall's Motion to Amend is futile and should be denied as a matter of law.

## CONCLUSION

Plaintiff has failed to establish good cause for Amending its Complaint, as required by Rule 15(a) of the Federal Rules of Civil Procedure. Plaintiff's Motion to Amend is untimely and the requested amendment seeking to clarify the causes of action, and to add either a defamation or a bad faith claim based on litigation defenses and strategy is meritless and not supported by the law. Accordingly, this Court should deny Plaintiff's request to file an Amended Complaint.

**BORGELT, POWELL, PETERSON & FRAUEN S.C.**

Date: **April 8, 2016**

By **/S/** *Stacy E. Ertz*
Stacy E. Ertz, Esq. (WI #1040729)
7825 3rd Street North
Suite 206
Oakdale, MN 55128
Telephone: (651) 256-5000
Fax: (651) 340-1456
*Counsel for Defendant*
*Travelers Casualty Insurance*
*Company of America*