**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

EMERSON HALL ASSOCIATES, L.P.,

Plaintiff,

v.

Case No. 15-CV-447-jdp

TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA,

Defendant.

---

SID GRINKER RESTORATION, INC.,

Intervening Plaintiff,

v.

EMERSON HALL ASSOCIATES, L.P., and TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA,

Defendants.

---

**PLAINTIFF EMERSON HALL ASSOCIATES, L.P.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS COMPLAINT AGAINST TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA**

---

Plaintiff Emerson Hall Associates, L.P. ("Emerson Hall") should be granted leave to file its Amended Complaint against Defendant Travelers Casualty Insurance Company of America ("Travelers Insurance") because it has demonstrated that good cause exists for the amendment.

## ARGUMENT

Good cause exists under Federal Rules of Civil Procedural Rule 15(a)(2), for allowing Emerson Hall to amend its pleadings: (1) Emerson Hall has not delayed in filing its request for leave to amend its complaint as this motion just two weeks after retaining new counsel; (2) amendment of the complaint will not unduly prejudice any of the parties to this case, as the parties are still in early discovery; and (3) Emerson Hall's proposed amendment is not futile because it has asserted valid theories of recovery and facts supporting those theories.

### I. Emerson Hall Did Not Unduly Delay in Filing Its Motion to Amend Its Complaint, and Its Motion Was Not the Result of Any Dilatory Motive.

Emerson Hall has shown good cause for its motion to amend its complaint. Travelers Insurance opposes the motion suggesting that there was an undue delay and a dilatory motive for the filing. Travelers Insurance does not contend that it would suffer any prejudice from such an amendment. (DN 49, p. 3.) Travelers Insurance also fails to develop an argument as to why it belives that Emerson Hall has a dilatory motive for its amendment. Instead, Travelers argues that because the substantive claims remain the same, no amendment is necessary because "clarification of Emerson Hall's allegations, if any, may be accomplished via the discovery process." (DN 49, p. 4.) With all due respect, clarifying Emerson Hall's claims will make the discovery process more run efficiently.

In addition to clarifying the allegations contained in the existing complaint, Emerson Hall has included new allegations related to its bad faith claim. Emerson Hall did so after it learned from Travelers Insurance's January 20, 2016

counterclaim that Travelers Insurance was withholding policy benefits and was attempting to recover prior payments by accusing Emerson Hall of fraud and attempting to void the policy. Travelers Insurance filed this counterclaim during a period when Emerson Hall's former counsel had sought, and ultimately obtained, permission to withdraw. Emerson Hall was not represented by an attorney from Febuary 5, 2016 until March 7, 2016. Emerson Hall filed its motion to amend its complaint on March 23, 2016. (DN 47.) In doing so, Emerson Hall acted without undue delay or a dilatory motive. This amendment will not cause delay in this case because the issues are already in the case.

## II. Emerson Hall's Claims Are Well-Supported by Wisconsin Law and Are Not Futile.

Travelers Insurance argues that the proposed amendment would be futile because it believes that a bad faith claim is invalid if based on events occuring after litigation commences. (DN 49, p. 9.) Traveler's Insurance argument is wrong. There is no "absolute litigation privilege" protecting insurers' bad faith conduct in Wisconsin.[1]

First, Emerson Hall's bad faith claim is not based solely on Traveler Insurance's litigation tactics. Emerson Hall has not brought a bad faith claim against Travelers Insurance because it is alleging that Travelers Insurance has engaged in abusive motion practice or discovery. Rather, the amendment for the bad faith claim was asserted because Travelers Insurance has recklessly and falsely

[1] The "absolute litigation privilege" cases Travelers Insurance cites are not insurance bad faith cases. See DN Churchill v. WFA Econometrics Corp., 2002 WI App 305, 258 Wis. 2d 926, 655 N.W.2d 505; (Ct. App. 2002

accused Emerson Hall of fraud. Travelers Insurance has done so for the purpose of witholding benefits that are still owed to Emerson Hall and for the purpose of attempting to recover over one million dollars of payments that it previously has paid to Emerson Hall. In doing so, Travelers Insurance has demonstrated a failure to properly investigate and evaluate the factual bases for such accusations. The fact that Travelers Insurance chose to reveal its fraud-as-a-basis position in its counterclaim and not in a pre-suit denial letter does not insulate Travelers Insurance from bad faith.

Travelers Insurance presents a survey of case law from around the country to support the proposition that an insurer's litigation tactics cannot be the basis of bad faith. Yet Travelers Insurance all but ignores the jurisdiction that actually matters—Wisconsin.[2]

[2] Lest the Court be misled by Travelers Insurance's purported nationwide survey of the law, most courts recognize that insurance companies' duty of good faith and fair dealing continue after suit has been filed. Indeed, if an insurer's actions after litigation has commenced are barred from qualifying as bad faith conduct, then "insurance companies would have the perverse incentive to spur injured parties toward litigation, whereupon the insurance company would be shielded from any claim of bad faith." *Knotts v. Zurich Inc. Co.*, 197 S.W.3d 512 (2006). This type of policy would allow "insurance companies to engage in whatever sort of practice—fair or unfair—they see fit to employ." *Id.*

An insurer's duty of good faith continues during litigation, and its duty to pay a legitimate claim does not end merely because a lawsuit has been filed against it. *Id.* at 518; *Gregory v. Cont'l Ins. Co.*, 575 So.2d 534, 541 (Miss. 1990). "Put more bluntly, if you owe a debt the duty to pay does not end when you are sued for nonpayment of it." *Id.*

The majority of courts that have addressed the issue, either as a contractual duty or as a statutory duty, have held that insurers still owe a duty of good faith to their insureds, even after litigation has commenced. *See White v. E. Title Ins. Co.*, 40 Cal. 3d 870, 221 Cal. Rpt. 509, 710 P.2d 309, 316–17 (1985) (holding that the duty of good faith continues during litigation because the contractual relationship continues); *Haddic v. Valor Ins.*, 315 Ill. App. 3d 752, 248 Ill. Dec. 812, 735 N.E.2d 132, 133 (2000) ("We reverse and hold that an insurance company has a duty to act in good faith in settling a claim against its policyholder in a timely manner both before and after suit is filed."); *Harris v. Fontenot*, 606 So. 2d 72, 74 (La. Ct. App. 1992) ("We first note that nowhere in either statute is there an express distinction limiting the application to the pre-litigation conduct of the insurer . . . . [W]e believe that it is clear that the statute was enacted to impose a requirement of good faith and fair dealing on the insurer, requirements that are no less important after ligation has begun as before."); *Palmer v. Farmers Ins. Exch.*, 261 Mont. 91, 861 P.2d 895, 913 (1993) ("[A]n

Wisconsin law long has recognized that an insurance company's litigation tactics may give rise to bad faith and also punitive damages awards. *See, e.g.*, *Trinity Evangelical Lutheran Church & Sch.-Freistadt v. Tower Ins. Co.*, 2003 WI 46, ¶ 15, 261 Wis. 2d 333, 343, 661 N.W.2d 789, 793–94. At issue in *Trinity* was whether an insurance policy could be backdated due to mutual mistake. Towards the onset of litigation, the insurance company filed a motion for summary judgment based solely on language of the written policy, and the insurance company's motion failed to bring to the court's attention that the insurance company had been informed by its agent that the written policy was in error. *Id.*

Contrary to the argument Travelers Insurance makes here, the *Trinity* court held that the insurer acted in bad faith when it failed "*to inform the court in its motion*" that its agent had requested the policy to be backdated and that Tower had denied the agent's request. *Id.*, 2003 WI 46, ¶ 15 (emphasis added). Plainly, the insurer's decision to file a summary judgment motion is a litigation tactic. Nonetheless, the *Trinity* court explained that filing such a motion constituted bad faith because it is clear that the insurance company failed to take "honest, intelligent action or consideration based upon knowledge of the facts and circumstances" first when it when it denied coverage and "when the insurance company *Tower also failed to take such action or consideration when it failed to*

insurer's duty to deal fairly and not to withhold payment of valid claims does not end when an insured files a complaint against the insurer."); *O'Donnel ex rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. Ct. 1999) ("[W]e refuse to hold that an insurer's duty to act in good faith ends upon the initiation of suit by the insured."); *Barefield v. DPIC Cos., Inc.*, 215 W. Va. 544, 600 S.E.2d 256, 267 (2004) ("We therefore must conclude that the language of the UTPA does not restrict the scope of the conduct that is proscribed by the Act to that which occurred prior to filing the lawsuit.").

*inform the court of [the agent's] error and his request for backdating. Id.* at ¶ 42 (emphasis added).

The *Trinity* court further held that insurer's litigation tactic of asking for summary judgment "without informing the court of the dispute regarding [the agent's] error, and the request for backdating . . . illustrate a continuing, egregious, and flagrant pattern of disregard toward Tower's duty owed to its insured, Trinity." *Id.*, 2003 WI 46, ¶ 62. Consequently, punitive damages were warranted.

Wisconsin courts have further held that even where an insurance did not act in bad faith with its initial investigation they can still be liable for bad faith soley based on litigation conduct. *See, e.g, Gen. Cas. Co. of Wis. v. Choles*, No. 2009AP832, 2010 WL 958028, at *5–9, 2010 WI App 62, ¶¶ 25–36 (Wis. Ct. App. March 18, 2010). In *Chloes*, the court concluded that that insurer did not act in bad faith in its initial investigation "***but did engage in bad faith when it later sought summary judgment on reformation***." *Id.* at ¶ 36. As such, Travelers Insurance's argument that a bad faith claim cannot be based on litigation conduct has no merit in Wisconsin.

In comparison to *Trinity* and *Choles,* which simply sought reformation of insurance policies, Travelers Insurance has falsely accused Emerson Hall of fraud. False accusations of fraud are much more serious and much more malicious than denying reformation of an insurance policy. Here, Travelers is attempting to recover the payments that it owed to Emerson Hall, without a basis for doing so. Wisconsin courts have recognized that insurance companies that attempt to avoid their

coverage obligations by baselessly accusing their insureds of engaging wrongful conduct may give rise to a bad faith claim and punitive damages. *See Weiss v. United Fire & Casualty Co.*, 197 Wis. 2d 365, 541 N.W.2d 753 (1995) (punitive damages awarded after insurer accused insured of arson); *Upthegrove Hardware, Inc. v. Pennsylvania Lumbermans Mutual Ins. Co.*, 146 Wis. 2d 470, 431 N.W.2d 689 (Ct. App. 1988) (same). The amended complaint is not futile as Wisconsin law recognizes that an insurer's false accusations may give rise to both bad faith and punitive damages.

Travelers Insurance further mischaracterizes Wisconsin law when it suggests that bad faith only can arise out of the claims handling process, citing to *Anderson v. Continental Insurance Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978) and *Brethorst v. Allstate Property and Casualty Insurance Co.*, 2011 WI 41, 334 Wis. 2d 23, 798 N.W.2d 467. (*See* DN 49, p. 5.) As *Choles* and *Trinity* demonstrate, that simply is not true. *See Choles*, No. 2009AP832, 2010 WL 958028, 2010 WI App 62; *Trinity*, 2003 WI 46, 261 Wis. 2d 333, 661 N.W.2d 789.

Moreover, the Wisconsin Supreme Court explicitly has rejected insurers' attempts to limit bad faith to situations described in existing case law:

> "To the extent Liberty Mutual argues that the three previously recognized situations giving rise to a bad faith cause of action are exclusive, it asks the court to arrest the common-law development of the tort of bad faith.

*Roehl Transp., Inc. v. Liberty Mut. Ins. Co.*, 2010 WI 49, ¶ 35, 325 Wis. 2d 56, 75, 784 N.W.2d 542, 552. The *Roehl* court further explained:

> "No Wisconsin case holds that the three types of bad faith claims previously recognized are the only situations in which a claim of insurance bad faith may be recognized. Nor do Wisconsin cases purport to catalogue all possible bad faith claims. We cannot unearth any hint in the case law that the tort of bad faith is confined to the three fact patterns described in the existing case law."

*Id.* at ¶ 36.

Further, the fact that Travelers Insurance has paid Emerson Hall does not render the claim futile because Travelers Insurance is attempting to recover these payments by falsely accusing Emerson Hall of fraud. The practical effect to the insured is the same as if Travelers Insurance had not paid the claim at all. In both situations the insurance company is attempting to deprive their insured of benefits that are properly owed under the policy. In doing so, Travelers Insurance has failed to exercise its duty of good faith that it owed to Emerson Hall.

Finally, Travelers Insurance suggests that Emerson Hall seeks to amend its complaint to assert a defamation claim based on the allegations set forth in a counterclaim. (DN 49, pp. 4–5.) Emerson Hall has not brought a claim for "defamation," and Travelers Insurance's defamation cases provide no guidance here. (*See id.*, *citing Rain v. Rolls-Royce Corp.*, 626 F.3d 372 (7th Cir. 2010) (breach of settlement agreement's non-disparagement provision in lawsuit involving misappropriation of intellectual property and RICO violations); *Churchill v. WFA Econometrics Corp.*, 2002 WI App 305, 258 Wis. 2d 926, 655 N.W.2d 505 (defamation in a divorce proceeding).) Rather, Emerson Hall noted the "defamatory,

reckless, malicious" nature of Traveler's insurance false representations as a basis for bad faith and for punitive damages. (DN 47-1, ¶ 58).

## CONCLUSION

Pursuant to Rule 15(a)(2), Emerson Hall has established good cause, as set forth above, for an order permitting Emerson Hall to file the proposed amended complaint included with this motion. Therefore, Emerson Hall respectfully requests that the Court grant its motion to amend the pleadings.

Dated April 15, 2016.

HALLOIN & MURDOCK, S.C.
Attorneys for the Plaintiff

s/ Anthony K. Murdock
Anthony K. Murdock
Wis. State Bar No. 1054531
Andrea L. Murdock
Wis. State Bar No. 1051899

HALLOIN & MURDOCK, S.C.
839 North Jefferson Street
Fifth Floor
Milwaukee, Wisconsin 53202
p 414-732-2424
f 414-732-2422
amurdock@halloinmurdock.com
andrea.murdock@halloinmurdock.com